James Alker  
vs.  } Eq. No. 12025.  
William A. Alker

January 6, 1934.

JOSLIN, J. This is a bill of complaint to set aside a deed, and is heard on bill, answer and proof.

The parties hereto were related to and are heirs of Elizabeth Patterson, who deceased on December 13, 1932.

On November 19, 1931, Mrs. Patterson executed a deed which purported to convey to the respondent certain real estate situated in East Providence. The deed was recorded with the land records of East Providence on December 14, 1932.

The bill alleges that said deed was null and void and of no effect because (1) Mrs. Patterson was of unsound mind; (2) the execution of said deed was procured by undue influence; and (3) it never was the purpose or intent of Mrs. Patterson at the time of the execution of said deed to give, create, or vest any present interest or future interest in and to the respondent.

The complainant contends that he has proved his case through the testimony of the respondent whom he called as his only witness.

There is absolutely no evidence in respect to the first two grounds. The third ground raises the only question in the case: namely, Was there an adequate delivery of the deed by Mrs. Patterson to the respondent?

The respondent went to live with Mrs. Patterson about the year 1900. He was then 12 years of age. With the exception of three years when he served in the Army, he lived with Mrs. Patterson until he married. Thereafter he occupied a tenement in her house and saw her frequently. During the time he lived with her, he worked and brought her his pay, she giving him therefrom some spending money. Her husband died in 1929 and she had no children. On March 10, 1930, she made a will making the respondent the beneficiary of all her estate. It is clear from the evidence that there was a relationship between them closely akin to that of mother and son.

On November 19, 1931, she signed the deed in question. At about the same time she converted her bank account into an account of which she and the respondent were joint owners.

The deed was drawn by John F. O'Connell, Esq. She signed it before him, acknowledged it to be her free act and deed and handed it to the respondent with the request that he not record it until she died. The respondent in turn handed the deed to Mr. O'Connell with whom it remained until the day after her death. It was then placed on record.

The respondent testified that the reason he handed the deed to Mr. O'Connell was "for safe keeping; it wasn't mine". It was "my aunt's". He was asked: "And it was to become yours after she died?" "Yes, sir," he replied.

Following this delivery of the deed, the respondent, acting as Mrs. Patterson's agent, collected the rents from the tenants occupying the real estate. He gave receipts upon which appeared her name. If she were well, she collected the rents herself. He paid the taxes and expenses for repairs with her money. He admitted that the reason for this was that during her lifetime the property was hers and would become his "only if, as and when she died". "It is a gamble," he said. He also stated that "she might have made other arrangements if I kicked in".

These facts were drawn from the respondent by leading questions asked by the complainant's counsel.

Mr. O'Connell and his secretary testified that Mrs. Patterson delivered the deed to the respondent, at which time she stated that it was her wish that it should not be recorded until after she died. They both admitted they had no knowledge as to the understanding between Mrs. Patterson and the respondent as to his future relationship to the property. Mr. O'Connell did state that he was careful to tell her that there would have to be a valid delivery of the deed and the property.

On this state of the evidence the complainant maintains that there was no valid delivery of the deed.

The case of *Johnson* vs. *Johnson*, 24 R. I. 571, declares the law applicable to this case.

"In order to convey title to real estate it is necessary that the deed thereof should be delivered to the grantee or to someone for his use, and the ordinary test of delivery is: Did the grantor by his acts or words, or both, intend to divest himself of the title to the estate described in the deed? If so, the deed is delivered, but if not, there is no delivery and hence no title passes. In order to constitute delivery, the grantor must absolutely part with the possession and control of the instrument."

See also,

*Januskewicz* vs. *Kowal*, 47 R. I. 348, and 18 Corpus Juris 196.

It is clear that there was a delivery of the deed to the respondent. But did Mrs. Patterson intend to divest herself of the title to the estate described in the deed? Did she absolutely part with the possession and control of the instrument? In the opinion of the Court she did not.

If the only evidence in the case were that of Mr. O'Connell and Miss Broderick, it would perhaps be possible, with the aid of inference and deduction, to decide in the respondent's favor. But we cannot ignore the respondent's own testimony, some of which is quoted above. The respondent was not a man of education or of experience and on the suggestion that perhaps he might not have understood the leading questions asked of him by opposing counsel, and after the noon recess, he was recalled to the stand. In reply to his own counsel's questions, he stated: "It was her property until she died, and that is all I know." In reply to the Court's questions, he testified, "She gave it to me with the understanding that it was hers until she died."

Furthermore, the actions of the respondent and of Mrs. Patterson in respect to the property, following the delivery of the deed for the period of about one year up to the date of her death, are entirely inconsistent with the intention to absolutely part with the control of the instrument and to divest herself of the title to the property.

The intent is the all important element. We are of the opinion that it

was the purpose of Mrs. Patterson to ultimately make the respondent the object of her bounty but she did not effect her purpose by a present delivery divesting herself of all power and dominion over the deed. While she handed the deed over to the respondent, she still retained some right and authority to control it. She exercised dominion over the real estate up to the time of her death. If the respondent pre-deceased her, she could make other arrangements regarding the property. She parted with the manual possession but she did not part with the control thereof. Not only his own testimony proves this, but the facts and circumstances strongly point that way.

She made a disposition which was evidently of a testamentary character.

"But an instrument which is intended to operate as a will, without being executed in accordance with the provisions of the statute relating thereto, cannot be allowed to have the effect of a will."

*Johnson* vs. *Johnson, supra.*

For the foregoing reasons, we must decide that the deed in question is null, void and of no effect.

Decree may be entered accordingly.

For complainant: Hogan & Hogan.

For respondent: John F. O'Connell.